**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ABBOTT LABORATORIES, ET AL. PRETERM INFANT NUTRITION PRODUCTS LIABILITY LITIGATION | MDL No. 3026 |
| | Master Docket No. 22 C 71 |
| This Document Relates To: | |
| JESSICA JACOBS, individually and as special administrator of the Estate of C.B., a deceased minor, | |
| Plaintiff, | |
| v. | No. 22 C 2222 |
| ABBOTT LABORATORIES, | Judge Rebecca R. Pallmeyer |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jessica Jacobs is one of many parents who allege that their premature infant developed necrotizing enterocolitis ("NEC") after consuming cow's-milk-based formula manufactured by Abbott Laboratories ("Abbott"). In response to an earlier motion to dismiss [18], Ms. Jacobs voluntarily dismissed certain of the seven counts in her original complaint. She now seeks leave to file a Second Amended Complaint [22] adding new counts against Abbott under the Illinois Wrongful Death Act and the Illinois Survival Act, as well as a request for punitive damages. For the reasons discussed below, her motion is denied with respect to the proposed Illinois Survival Act claim but otherwise granted.

**BACKGROUND**

Ms. Jacobs gave birth to a child, C.B., at Shands Jacksonville Hospital ("Shands"), in Jacksonville, Florida, on November 5, 2008. (First. Am. Compl. [20] ¶ 6.) Born at just 36 weeks gestation and in respiratory distress, C.B. was placed in the hospital's Neonatal Intensive Care Unit (NICU) and fed NeoSure, Abbott's infant formula for premature babies. (*Id.* ¶¶ 12–14.) After

eight days, C.B. was diagnosed with NEC; the child died after an unsuccessful surgery that same day. (*Id.* ¶¶ 17–18.)

Ms. Jacobs, a Georgia resident, filed her original seven-count complaint against Abbott on April 28, 2022, in Illinois. (*See* Compl. [1].) In January 2023, after the case was consolidated in this MDL, Abbott moved to dismiss three counts of Ms. Jacobs' first complaint. (Def.'s Mot. to Dismiss [18].) In response, Ms. Jacobs amended her complaint to remove the challenged counts, mooting Abbott's motion. (*See* First Am. Compl. [20]; Minute Entry [21].) Then, in July 2023, Ms. Jacobs moved for leave to file a Second Amended Complaint. (Pl.'s Mot. for Leave to File a Sec. Am. Compl. [22].) The proposed amended complaint asserts the undisturbed counts from her first complaint—strict liability (Counts I & II), negligence (Count III), and loss of consortium (Count VI)—and adds three new counts, including one for punitive damages (Count VII) and two under Illinois law: a claim under the Illinois Wrongful Death Act (Count IV), and a survival claim under the Illinois Survival Act (Count V). (*See* Pl.'s Sec. Am. Compl., Ex. A to Pl.'s Leave Mot. (hereinafter "Proposed SAC") [22] ¶¶ 92–105, 110–18.)

Abbott opposes Ms. Jacobs' motion on futility grounds. Specifically, Abbott contends that the proposed Illinois Survival Act claim (Count V) is futile because Florida law, which offers no corresponding survival claim, governs the dispute. (*See* Def.'s Opp. To. Pl.'s Mot. For Leave to File Sec. Am. Compl. ("Def.'s Opp.") [24].) Ms. Jacobs argues that a choice-of-law inquiry is premature at this stage; she urges that the court should grant her motion and address the viability of Count V at a later date. (Pl.'s Reply in Further Supp. of Pl.'s Mot. for Leave to File a Sec. Am. Compl. (hereinafter "Pl.'s Reply") [25] at 2–4.) Should the court reach the issue now, Plaintiff contends that Illinois law governs her claims against Abbott. (*Id.* at 4–7.) For the reasons stated here, the court agrees with Abbott that, because Plaintiff's proposed complaint does not effectively counter the presumption that Florida law will apply, her request to add Count V is denied.

**DISCUSSION**

A party may amend its pleadings once as a matter of course, but any subsequent amendments require "the opposing party's written consent or the court's leave." FED. R. CIV. P. 15(a)(2). "It is within the sound discretion of the district court whether to grant or deny a motion to amend." *Perrian v. O'Grady*, 958 F.2d 192, 194 (7th Cir. 1992). And although courts should "'freely give leave [to amend] when justice so requires,' courts may deny a proposed amended pleading if the amendment would be futile." *Always Towing Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (quoting *Int'l Union of Operating Eng'rs Local 139, AFL-CIO v. Daley*, 983 F.3d 287, 296 (7th Cir. 2020)). To determine whether a proposed amendment is futile, the court applies Rule 12(b)(6)'s legal sufficiency standard and asks whether "the proposed amended complaint fails to state a claim." *Bernacchi v. First Chi. Ins. Co.*, 52 F.4th 324, 328 (7th Cir. 2022) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)).

Defendant opposes Plaintiff's motion for leave to add a claim to her complaint under the Illinois Survival Act. (Def.'s Opp. [24] at 1, 7.) Specifically, Defendant asserts that a choice-of-law analysis establishes that Florida law governs liability issues in this case and, unlike Illinois law, does not allow survival actions for personal injury claims. (*Id.* at 3–6 (citing Florida's Wrongful Death and Conflict with Survival Statute, Fla. Stat. Ann. § 768.20, and the Illinois Survival Act, 740 Ill. Comp. Stat. 5/27-6).)

**I.      Whether a Choice-of-Law Analysis is Appropriate at this Stage**

Before addressing which state's law applies to this dispute, the court must address whether it is premature to do so at all. As Plaintiff points out, courts occasionally defer ruling on choice-of-law issues where further factual development is necessary to undergird the decision. *See, e.g., Hartford Fire Ins. Co. of Ill. v. Maynard*, No. 01 C 4982, 2002 WL 256800, at *5 (N.D. Ill., Feb. 21, 2002) (declining to decide choice-of-law issue at motion to dismiss stage, since "the facts necessary" to do so "are only marginally developed"); *Harper v. LG Elecs. USA, Inc.*, 595 F.

3

Supp. 2d 486, 490–91 (D.N.J. Feb. 3, 2009) (refusing to engage in choice-of-law analysis at motion to dismiss stage, stressing New Jersey's fact-intensive governmental-interest-balancing approach to such analysis). On the other hand, as Plaintiff admits, choice of law is often raised "as part of or simultaneously with a motion to dismiss," which, for all intents and purposes, presents the same inquiry as that here. *See Lindland v. TuSimple, Inc.*, No. 21-CV-417 JLS (MDD), 2022 WL 687148, at *4 (S.D. Cal. Mar. 8, 2022).

Indeed, other courts have confronted choice-of-law issues in the context of deciding a motion for leave to amend. *See Ind. Funeral Dirs. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 655 (7th Cir. 2003) (affirming lower court's denial of motion to amend on futility grounds, where lower court determined that Indiana law applied and barred plaintiff's proposed claim). In this context, the relevant inquiry is whether a plaintiff has made a plausible case for application of the preferred state's law. *See id.* (noting that plaintiff "does not explain how Michigan law is applicable to this dispute" in upholding magistrate judge's decision that Indiana law applied). The court thus looks to whether Ms. Jacobs' proposed complaint, on its face, alleges sufficient facts to determine the applicable law—particularly whether she has made out a plausible claim that Illinois, not Florida, law applies.

II.     **Choice-of-Law Analysis**

As this case was filed in Illinois, the court must apply Illinois choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941). And as this court has recently noted, Illinois law espouses a three-pronged approach that asks: first, whether an outcome-determinative conflict exists on the relevant issue between Illinois and Florida law; second, whether Illinois choice-of-law rules create a presumption in fa of od one or the other state's law; and third, whether, under Sections 6 and 145 of the Restatement (Second) of Conflict of Laws, which Illinois adopts, that presumptive choice should be overridden because another state has a more significant relationship to the relevant issue. *In re Abbott Lab'ys, et al. Preterm Infant Nutrition Prods. Liab. Litig.*, No. 22 C 1951, 2023 WL 4273701, at *2 (N.D. Ill. June 29, 2023)

("*Cresap*") (citing *Townsend v. Sears, Roebuck & Co.*, 227 Ill.2d 147, 155, 879 N.E.2d 893, 898 (Ill. 2007)). The court addresses each prong in turn.

### A. Conflict of Laws

A choice-of-law analysis is required only if the application of one state's law over that of the other state "will make a difference in the outcome." *Bd. of Forensic Doc. Exam'rs, Inc. v. Am. Bar Assoc.*, 922 F.3d 827, 831 (7th Cir. 2019) (quoting *West Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017)). The parties in this case agree that there is an outcome-determinative conflict between Illinois and Florida law with respect to survival actions. (Pl.'s Reply [25] at 4.) Under Florida law, "[w]hen a personal injury to the decedent results in death, no action for the personal injury shall survive . . . ." Fla. Stat. Ann. § 768.20. By contrast, under the Illinois Survival Act, "actions to recover damages . . . for an injury to the person" *do* survive that person's death. 755 ILCS 5/27-6. The existence of a survival claim to recover damages for C. B.'s injuries thus depends on whether Florida or Illinois law applies.

### B. Illinois Choice-of-Law Rules Presume that Florida Law Applies

As this court has recently noted, in personal injury actions Illinois courts presume that "the local law of the state where the injury occurred" determines liability, unless "with respect to the particular issue, some other state has a more significant relationship." *Cresap*, 2023 WL 4273701, at *3 (quoting *Townsend*, 227 Ill.2d at 165, 879 N.E.2d at 904). This is a "*strong* presumption . . . that the law of the place of injury . . . governs the substantive issues" of Plaintiff's claim. *Townsend*, 227 Ill.2d at 166, 879 N.E.2d at 905 (emphasis in original). The presumption is at its greatest in "[t]he state where the *conduct* occurred . . . [when] the injury occurred in the course of an activity or of a relationship which was centered" in the state. *Id.* at 166, 879 N.E.2d at 904 (emphasis in original) (quoting Restatement (Second) of Conflict of Laws § 146, Comment *e*, at 432 (1971)).

C.B. was born, was fed NeoSure, and ultimately developed and succumbed to NEC in a Florida hospital. Both the relevant conduct—feeding this baby the infant formula manufactured

by Abbott—and the resulting injury—the child's developing NEC—occurred in Florida. A strong presumption thus exists in favor of applying Florida law to Plaintiff's claim.

Plaintiff argues that, instead, "Florida should not be given presumptive weight because Plaintiff is not a resident of Florida and has no current connection to the state . . . ." (Pl.'s Reply at 5.) It is true that there are "relatively rare situations where . . . the state of injury bears little relation to the occurrence and the parties." *Kleronomos v. Aim Transfer & Storage Inc.*, No. 19-CV-01844, 2021 WL 1546428, at *4 (N.D. Ill. Apr. 20, 2021) (citing Second Restatement of Conflict of Laws § 146, Comment c, at 430–31 (1971)). The paradigmatic example of this is when the place of injury is "fortuitous"—as, for example, in an airplane crash where no parties reside and where the state in which the plane crashed was entirely random. *See* Second Restatement of Conflict of Laws § 145, Comment e, at 419 (1971); *In re Air Crash Disaster Near Chicago, Ill. On May 25, 1979*, 644 F.2d 594, 615 (7th Cir. 1981) (noting that air-crash disasters "present situations where the place of injury is largely fortuitous").

But Plaintiff has not plausibly alleged anything like that here. Her complaint alleges two relevant facts: that, in 2008, she gave birth to C.B. in Florida, where C.B. was treated and succumbed to illness; and that she lives in Georgia now, or at least as of the time of filing in 2022. (*See* Proposed SAC ¶¶ 6–7.) She does not allege any facts plausibly indicating that the location of C.B.'s birth in Florida was somehow random—in other words, that her presence in Florida in 2008 was completely unplanned and thus fortuitous. She has not suggested, for example, that she was simply passing through Florida when she went into labor—circumstances that *might* militate in favor of a finding that Florida's connection to the suit is fortuitous. *Cf. Rosenblum v. Warner & Sons, Inc.*, 819 F. Supp. 767, 770 (N.D. Ind. 1993) (applying Florida law when tort occurred in Florida and plaintiffs resided in Florida, but faulty trailer hitch gave way fortuitously in Indiana). If there are any such relevant facts, Plaintiff has not identified them in her reply brief nor sought to include them in any amended pleading.

6

To the contrary, language in Plaintiff's Reply Brief strongly implies that she was living in Florida when C.B. was born: Plaintiff states in her reply that after C.B.'s birth, "Plaintiff subsequently moved to Georgia in or around November 17, 2008."[1] (Pl.'s Reply at 1 n.1.) Similarly, she seeks to distinguish this court's recent similar order, *Cresap*, by claiming that there, unlike here, the plaintiffs "*still* reside in the state where the injury occurred." (*Id.* at 5 (citing *Cresap*, 2023 WL 4273701, at *4) (emphasis added).) The fair inference from this argument is that Ms. Jacobs resided in Florida at the time of her child's birth. And even if she did not reside in Florida, the court strongly presumes that Florida law applies so long as her presence there at the time of the birth was not merely a " 'fortuitous . . . transversing' of [Florida] soil." *Jaurequi v. John Deere Co.*, 986 F.2d 170, 175 (7th Cir. 1993) (quoting *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 143 (5th Cir. 1991)) (using the Second Restatement of Conflict of Laws to determine that Missouri law applied, where Spanish citizen living in Texas was injured by Texas equipment while on a research trip in Missouri).[2] In other words, nothing on the face of Ms. Jacobs' proposed complaint suggests that her presence in Florida was random or involuntary; a strong presumption in favor of Florida law thus applies.

---

[1] In this reply brief, Plaintiff cites ECF No. 20—her first amended complaint—for the proposition that she moved to Georgia after C.B.'s birth; however, the court could not find this detail in either the first or (proposed) second amended complaint. Regardless, "facts alleged by a plaintiff in a brief in opposition to a motion to dismiss 'may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.'" *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (quoting *Guttierez v. Peters*, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997)). And as noted above, though Plaintiff's reply is not technically an opposition to a motion a dismiss, it is treated the same when assessing futility in the context of a motion for leave to amend. *See Bernacchi*, 52 F.4th at 328.

[2] Importantly, these cases concerning fortuity were decided before 2007, when the Illinois Supreme Court observed that courts were "*undervalu[ing]* the specific presumptive rules" in favor of the place of injury governing the applicable law in tort suits. *Townsend*, 227 Ill.2d at 162, 879 N.E.2d at 902 (emphasis added). If anything, then, the presumption in favor of Florida law is even stronger here.

### C. Sections 6 and 145 of the Restatement (Second) of Conflicts of Law Do Not Upset the Presumption in Favor of Florida Law

The presumption in favor of the law of the place of injury "may be overcome only by showing a *more* or *greater* significant relationship to another state." *Townsend*, 227 Ill.2d at 163, 879 N.E.2d at 903 (emphasis in original). In other words, Ms. Jacobs must show that "Illinois has a *more* significant relationship with the occurrence and with the parties" than Florida. *Id.* (emphasis in original) (quoting *Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593, 595 (1970)). To do so, Illinois courts apply the principles set forth in Sections 6 and 145 of the Restatement (Second) of Conflicts of Law. *Smith v. I-Flow Corp.*, 753 F. Supp. 2d 744, 747 (N.D. Ill. 2010). The court discusses each in turn, beginning with Section 145.

#### 1. Section 145 Factors

Section 145(2) directs consideration of four factors: where the injury occurred; where the conduct occurred which gave rise to the injury; where the parties reside or are domiciled; and where the parties' relationship is centered. Restatement (Second) of Conflict of Laws § 145(2) (1971); *Smith*, 753 F. Supp. 2d at 747. As discussed above, the first factor strongly favors Florida law, and that presumption remains undisturbed by Plaintiff's current residency in Georgia.

Nor does the second factor—the location of the conduct giving rise to the injury—weigh in favor of Illinois law over that of Florida. As Defendant notes, Plaintiff does not directly allege any specific actions that may have occurred in Illinois. (Def.'s Opp. [24] at 5.) Though it is reasonable to assume that "at least some of Abbott's allegedly harmful conduct occurred in Illinois," it is also reasonable that "Plaintiff[] and [her] healthcare providers would have been exposed in [Florida] to the advertising that allegedly influenced their decision to administer Abbott's products." *See Cresap*, 2023 WL 4273701, at *4. Moreover, the doctors fed C.B. Abbott's formula for eight days in Florida, allegedly spawning the injury there. This is similar to *Townsend*, in which the court stressed that the fact that the plaintiff purchased the defective product and used it in Michigan militated in favor of the application of Michigan law. 227 Ill.2d at

8

168, 879 N.E.2d at 906. The conduct giving rise to the injury is thus neutral at best and does not weigh against the presumption in favor of Florida law.

The third factor—parties' domicile, residence, place of incorporation, and place of business—ordinarily does not tip the balance when the plaintiff resides in the state where the injury occurred and the defendant resides elsewhere. *See Alea v. Wilson Sporting Goods Co.*, No. 17 C 498, 2017 WL 5152344, at *4 (N.D. Ill. Nov. 7, 2017) (in a case where Florida plaintiff alleged defects in a baseball bat manufactured by an Illinois business, the third factor "does not point strongly in either direction, as [Plaintiff] is located in Florida and [Defendant] in Illinois."); *Chi v. Loyola Uni. Med. Ctr.*, 787 F. Supp.2d 797, 802 (N.D. Ill. May 24, 2011) (where defamatory statement was drafted in Illinois but mailed to a potential employer in Arizona, defendant's presence in Illinois did not defeat the presumption that Arizona law governed). Similarly, this court found this factor a "wash" where the plaintiffs and defendant resided in different states, and where the plaintiffs were injured in the state in which they lived. *See Cresap*, 2023 WL 4273701, at *4. But here, as Plaintiff points out, neither party resides in the state where the injury occurred. So, while this factor would be a wash if deciding between Illinois and *Georgia* law's application, the court will assume that it provides modest support for application of Illinois law over *Florida* law, given that at this time no one resides in Florida.

The fourth factor focuses on where the relationship between the parties is centered. Plaintiff contends this factor favors Illinois, because the product was allegedly designed and distributed in this state. (*See* Pl.'s Reply [25] at 6.) Where the product was designed may have some bearing on the relationship between Plaintiff and Abbott, but the parties' relationship is primarily centered in Florida, where C.B. "was fed Abbott's products" and treated unsuccessfully for the injuries they allegedly caused. *Cresap*, 2023 WL 4273701, at *4. Accordingly, this factor weighs in favor of Florida law. To the extent that Abbott's having designed and marketed its formula in Illinois "may favor application of Illinois law," it at best makes this factor a wash, and

9

certainly does not overcome the strong presumption favoring the application of Florida law to Plaintiff's claims. *See id.*

In sum, the factors are largely neutral, and, to the extent any favor Illinois law, none are of enough weight to tip the scales away from the strong presumption that Florida law governs the dispute.

### 2. Section 6 Factors

Section 6 of the Restatement calls for consideration of a larger number of factors addressing the interests of the states whose laws conflict.[3] A "detailed analysis of all seven of the section 6 general principles is unnecessary," however, because some factors are "implicated only minimally" in personal injury actions. *Townsend*, 227 Ill.2d at 169–70, 879 N.E.2d at 906. As in *Townsend*, the most relevant section 6 factors implicated in this case are: the policies of the forum state; the relevant policies and interests of the other interested state in the determination of the issue; and "the basic policies underlying the particular field of law." *Id.*; *see also Cresap*, 2023 WL 4273701, at *5.

These factors also are largely neutral. Illinois, the forum state, certainly has an interest in regulating Abbott's conduct here; Florida, too, has an interest in its law reaching corporations who injure people in its borders and providing remedies for those injured plaintiffs. *See id.* Beyond this observation, neither party goes into detail about the underlying policy interests behind survival

---

[3] Unless state law dictates the choice of law governing a dispute, Section 6 of the Restatement directs courts to consider:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability and uniformity of result, and
(g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6(1) (1971).

statutes. Without more specific details as to what each state's interest would be in enforcing its law here, the court is left with no real evidence countering, let alone overcoming, the strong presumption favoring the application of Florida law.

Here again, Plaintiff stresses that she no longer resides in Florida and argues that this makes it "inappropriate" to apply Florida law to her claim. (*See* Pl.'s Reply [25] at 7.) She quotes *Haskins v. Midwest Air Traffic Control Serv., Inc.*, No. 12 CV 4584, 2016 WL 3653531, at *4 (N.D. Ill. July 8, 2016), which noted that "applying the law of a party's domicile to limit recovery is inappropriate when the defendant is not domiciled in that state, and other states have equal or greater interests." As *Haskins* recognized, the domiciliary state has an interest in compensating its own injured residents and also in "limiting tort recoveries against domiciled defendants." *Id.* at *2. But in this case, Plaintiff is not arguing for application of the law in the state in which she is domiciled. Instead, she seeks to apply the law of the state where Defendant is domiciled, but where she herself is not--law that permits recovery for a harm not compensable in the state where the injury occurred. *See also Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 586–87, 522 P.2d 666, 674 (Cal. 1974) (noting that "Mexico has no interest in applying its limitation of damages in wrongful death actions to *nonresident* defendants or in denying full recovery to its resident plaintiffs" (emphasis added)). This court presumes that Florida has no interest in limiting recovery against a nonresident corporation, but also that it has no interest in assuring that a non-resident plaintiff will enjoy a greater recovery than any resident plaintiff would. And Illinois's interest in providing more generous recovery for its own residents does not obviously extend to non-residents allegedly injured by defendants domiciled here.

The section 6 factors also fail to overcome the "strong presumption . . . that the law of the place of injury . . . governs the substantive issues herein . . . ." *Townsend*, 227 Ill.2d at 166, 879 N.E.2d at 905. Nothing in Plaintiff's proposed amended complaint or briefing plausibly alleges otherwise. Florida liability law thus governs Plaintiff's claims against Abbott. Because Count V of Plaintiff's proposed Second Amended Complaint raises a survival claim under Illinois

11

substantive law that conflicts with Florida law, Plaintiff's request to add such a count is futile. *See Indiana Funeral Directors*, 347 F.3d at 655 (approving denial on futility grounds in similar circumstances).

## **CONCLUSION**

Defendant does not contest Plaintiff's effort to add Counts IV and VII, which make out claims under the Illinois Wrongful Death Act and for punitive damages, respectively. Accordingly, the court grants leave for Plaintiff to amend her complaint to add those claims. For the reasons discussed above, however, the court denies Plaintiff leave to amend her complaint to incorporate Count V.

ENTER:

Dated: November 21, 2023

_____
REBECCA R. PALLMEYER
United States District Judge